UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTERIO BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 C 3579 |
| | ) |
| CHICAGO BOARD OF EDUCATION | ) Honorable Joan B. Gottschall |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER[1]

Plaintiff Oterio Butler brought this employment discrimination suit against her employer, the Chicago Board of Education (the "Board"), alleging that the Board violated 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") or Rehabilitation Act, and Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against her because of her age, race, and disability. Butler alleges that the Board failed to reasonably accommodate her disabilities, failed to stop harassment, and retaliated against her when she complained of disability discrimination to the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") in 2006. The Board has moved for summary judgment.

---

[1] The court notes that it had great difficulty deciphering Butler's submissions as they did not comply with the rules.

# I. BACKGROUND[2]

Butler is a 64 year old African-American woman who serves as a tenured teacher at Theophilus Schmid Elementary School ("Schmid Elementary") in Chicago, Illinois. In January 2004, Butler had a stroke. She alleges that she was on medical leave for the remainder of the 2003-2004 school year. Butler returned to work at Schmid Elementary at the start of the 2004-2005 school year. Butler underwent a remediation process for unsatisfactory job performance in 2005-2006. On May 31, 2006, Butler was suspended without pay. The Chief Executive Officer ("CEO") of the Board brought dismissal charges against Butler. The CEO dismissed these charges on November 28, 2006.[3] Butler was reinstated as a teacher at Schmid Elementary effective December 4, 2006.[4] Butler also received back pay from the time she was suspended without pay on May 31, 2006 until she was reinstated on December 4, 2006.

In July 2007, Deborah Williams became the principal of Schmid Elementary. On December 10, 2007, Williams proposed that Butler be suspended for two days without pay because, on November 19, 2007 and November 29, 2007, Butler allegedly left her class unsupervised and left school premises without permission. Butler appealed. Butler's appeal was denied on April 7, 2008. Butler served her suspension on April 8th and 9th of 2008. Butler

---

[2] As Butler was informed via the Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment, "Your list of disputed facts should be supported by your documents or declarations." "A declaration is a signed statement by a witness. The declaration must end with the following phrase: 'I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct,' and must be dated." L.R. 56.2. The court cannot consider unsupported factual assertions on a motion for summary judgment. Accordingly, any unsupported factual assertions are not included here.

[3] Although the Board initially contended that the Board dropped these dismissal charges on November 28, 2008, in its response to Butler's statement of additional facts, the Board does not dispute that the charges were dropped on November 28, 2006.

[4] As Butler was advised by the Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment, "If you do not provide the Court with evidence that shows that there is a dispute about the facts, the judge will be required to assume that the defendant's factual contentions are true." Thus, since Butler has not responded to the Board's contention that she was reinstated, this fact is deemed admitted. Other factual contentions to which Butler has not responded will be treated the same.

believes that Williams' actions were motivated by race.  Butler believes that Williams' actions were also in retaliation for Butler's opposition to what Butler sees as Williams' racist treatment of the Schmid community.  Butler further believes that the Board allowed her to be mistreated because of her race.

At some point, Butler asked to use a tape recorder in meetings since her physician said that a tape recorder would help give her the extra time she needed to organize new information.  Butler's request was denied.  On October 5, 2006, Butler filed a charge with the EEOC and the IDHR alleging that the Board discriminated against her on the basis of disability in violation of the ADA.  The charge alleges that the Board: (1) denied her request for a reasonable accommodation without engaging in the interactive process to discuss alternatives to her requested accommodation, and (2) suspended her without pay on May 31, 2006 when, since she was not granted a reasonable accommodation, she could not meet expectations.  On November 12, 2008, Butler filed a second charge with the EEOC and IDHR alleging that the Board violated Title VII and the ADA by discriminating against her by suspending her in April 2008 because of her race and disability and in retaliation for her prior complaint of discrimination.

In her statement of additional facts, Butler abandons her claim that the Board retaliated against her because of her protected activity under the ADA, noting instead that she is claiming retaliation under Title VII and the ADA for the two-day suspension, which Butler contends was proposed by Williams in retaliation for a speech she gave on April 5, 2008, in which she made various complaints about Williams.

## II.     LEGAL STANDARD

Rule 56 allows a movant to seek summary judgment when the opposing party's case consists of factually unsupported claims.  *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Simply put, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quotations omitted).

In order to survive a Rule 56 motion, the nonmoving party must either: (a) show that the movant cannot produce admissible evidence that a fact is not disputed, (b) show that the materials cited by the movant do not establish the absence or presence of a genuinely disputed material fact, or (c) direct the court's attention to specific admissible evidence in "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that show that there is some genuinely disputed material fact. Fed. R. Civ. P. 56(c)(1); *see United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010) ("[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." Also, it is "not the district court's job to sift through the record and make [a party's] case for him") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the

4

nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In addition, "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal quotations and citations omitted); *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.") Furthermore, at the summary judgment stage, "the court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255, and *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009)).

### III.  ANALYSIS

The Board argues that it is entitled to summary judgment because, *inter alia*: (1) Butler's claim that she was suspended in 2006 in violation of the ADA is moot, (2) Butler's evidence does not establish a disputed issue of material fact as to whether the Board failed to reasonably accommodate her, (3) Butler cannot make a prima facie case of discrimination based on race, (4) Butler cannot show that her later suspension was given because of her disability, (4) Butler has waived any claim for age discrimination, and (5) Butler has improperly changed the factual allegations underlying her retaliation claim.

**A.     Whether Butler's evidence establishes a disputed issue of material fact as to whether the Board failed to grant her a reasonable accommodation; Whether Butler's claim that she was suspended in 2006 in violation of the ADA survives.**

Butler's first EEOC charge claims that the Board discriminated against her on the basis of disability in violation of the ADA when it denied her request for a reasonable accommodation without engaging in the interactive process to discuss alternatives to her requested accommodation and then suspended her without pay when, since she was not granted a reasonable accommodation, she could not meet expectations. Butler, however, does not ask the court to direct the Board to reasonably accommodate her. (*See* Compl. at 4-5 (Butler has not checked the box that indicates that a plaintiff is asking the court to "[d]irect the defendant to reasonably accommodate the plaintiff's disability," although she did check boxes requesting "appropriate injunctive relief" and "other relief as the Court may find appropriate.")) Rather, Butler seems to be seeking relief to remedy the suspension without pay. (*See* Compl. at 5 (asking the court to grant her "appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees [and] other relief as the Court may find appropriate.").) Nevertheless, since Butler raises the issue of the Board's alleged failure to reasonably accommodate her in her response to the Board's motion for summary judgment and since she, in her complaint, does indicate that she would like the court to grant "appropriate injunctive relief" and "other relief as the Court may find appropriate," the court will address the issue.

"To survive [a] motion for summary judgment on her failure-to-accommodate claim, [a plaintiff] need[s] to present evidence that, if believed by a trier of fact, would show that (1) she is

a qualified individual with a disability; (2) [her employer] was aware of her disability; and (3) [her employer] failed to reasonably accommodate that disability." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009) (citing *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008)). The Board does not dispute that Butler is a qualified individual with a disability or that it was aware of her disability. Rather, the Board argues that Butler has not met her burden of proffering evidence that establishes a disputed issue of material fact as to whether the Board engaged in the interactive process to determine a reasonable accommodation.

To establish that the Board failed to reasonably accommodate her, Butler must present "evidence showing not only her attempt to engage in an interactive communication process with [her employer] to determine a reasonable accommodation, but also that [her employer] was responsible for any breakdown that occurred in that process." *Id.* at 975-76. "When there is a communication breakdown, we are required 'to isolate the cause of the breakdown and then assign responsibility.'" *Id.* at 976 (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). On this subject, Butler directs the court's attention to a May 3, 2006 letter in which an ADA administrator from the Chicago Public Schools informed her that the Board was denying her request to use a tape recorder to address her medical limitation. The letter states, "If you wish to appeal this decision, you may forward a written statement to the Chief Human Resources Officer . . . who will notify the ADA Steering Committee of the appeal." Butler does not point the court to any evidence showing that she appealed. Thus, Butler has not met her burden of presenting evidence that her employer was responsible for any breakdown of the interactive process. Rather, Butler's evidence shows that her employer informed her of the next step in the interactive process – an appeal. At that point, the ball was in Butler's court. It was up to Butler to continue the interactive process by appealing. Since Butler does not proffer

any evidence showing that she appealed and that, for example, the Board was responsible for a breakdown in the interactive process by failing to entertain her appeal or otherwise communicate with her, the Board is entitled to summary judgment on Butler's reasonable accommodation claim. Furthermore, since the reasonable accommodation claim on which Butler's claim for relief from the 2006 suspension relies does not have merit, the Board is entitled to summary judgment on Butler's claim for relief from the 2006 suspension.[5]

**B.     Whether Butler can make a prima facie case of race discrimination**

The Board argues that Butler has not met her burden of directing the court's attention to evidence that she will use to establish a prima facie case of race discrimination. Title VII provides, "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To establish discrimination sufficient to survive a motion for summary judgment, a plaintiff may

---

[5]     Even had Butler's reasonable accommodation claim survived, the court agrees with the Board's argument that, at least insofar as Butler is seeking back pay and reinstatement, her claim for relief from the 2006 suspension is moot since Butler was reinstated and received back pay for the period of time she was suspended. "To raise a claim before an Article III court, a litigant must present a case or controversy that can be properly adjudicated by the federal courts." *United States v. Diekemper*, 604 F.3d 345, 349-50 (7th Cir. 2010). "A case is moot when 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)).

Courts have found a claim to be moot where the remedy the plaintiff is seeking has already been granted. In *Moore v. Martin*, 764 F. Supp. 1298 (N.D. Ill. 1991), the plaintiffs sought "a permanent injunction restoring them to full duty status or sheltered duty status as Chicago police officers with full back pay." *Id.* at 1302. "However, [the] plaintiffs admit[ted] that they were restored to full duty status and that they ha[d] been fully reimbursed for pay they lost because of their September 25, 1989 suspensions." *Id.* The court held that the plaintiffs' claim for this permanent injunctive relief was moot.

Similarly, in *Herhold v. City of Chi.*, 723 F. Supp. 20 (N.D. Ill. 1989), Carol Herhold claimed that the defendants denied her furlough pay, a promotion, and back pay. *Id.* at 28-29. However, it was undisputed that Herhold ultimately received her furlough pay, the promotion, and back pay. *Id.* The court held that these claims were moot. *Id.* The court reasoned that Herhold had failed to respond to the defendants' mootness argument, with which the court agreed. *Id.*

As in *Moore* and *Herhold*, Butler has already been granted reinstatement and backpay so, to the extent that Butler is seeking reinstatement and back pay, her claim for relief from the 2006 suspension is moot.

proceed under the direct or indirect method of proof." *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). The indirect method is also known as the *McDonnell Douglas* burden-shifting method. *See Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) (noting that the indirect method is also known as the *McDonnell Douglas* burden-shifting approach.)

To proceed under [the direct] method, a plaintiff must offer either direct evidence that acknowledges discriminatory animus on the part of the employer or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences." *Grigsby*, 628 F.3d at 358. To proceed under the indirect method, Butler must establish a prima facie case by showing that: "(1) [s]he belongs to a protected class; (2) h[er] performance met h[er] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated others not in h[er] protected class received more favorable treatment." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 643 (7th Cir. 2006). "After the plaintiff has made out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the employment action." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). "Once the employer has articulated a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination falls away." *Id.* (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir.1998)). "The plaintiff then has the burden of producing sufficient evidence to show that reason to be pretextual." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

The only evidence Butler offers is her belief that Williams is a racist. This is not enough. "Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact." *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) (citing *Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986)). Butler, therefore, does not offer any evidence of discriminatory animus on

the part of her employer that would fulfill her obligations under the direct method. While she does show, under the indirect method, that she is in a protected class – since she is African-American – she does not offer any comparators to show that others not in her protected class who were similarly situated received better treatment. Thus, Butler does not meet her burden of directing the court's attention to evidence that the Board discriminated against her because of her race.

**C.  Whether Butler can show that she was suspended in 2008 because of disability discrimination.**

The Board argues that it is entitled to summary judgment, in part, because Butler cannot show that she was suspended in 2008 because of disability discrimination. Butler did not address this argument in her response. In order to establish discrimination in § 504 Rehabilitation Act or Title II ADA claims, a plaintiff must offer "evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). Butler contends that Williams suspended her because Williams is a racist. Butler does not contend that she was suspended because of her disability or that a Board rule disproportionately affected disabled people. Butler does not offer any evidence to show that Williams suspended her because of her disability. Given this, Butler has not met her burden of directing the court's attention to specific evidence that shows that the Board suspended her in 2008 based on her disability.

**D.  Whether Butler has waived any claim for age discrimination**

The Board argues that it is entitled to summary judgment, in part, because Butler has waived any claim of age discrimination by failing to bring such charges with the EEOC or

IDHR. "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (citing *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). "In determining whether the current allegations fall within the scope of the earlier charges, the court looks at whether they are 'like or reasonably related to' those contained in the EEOC complaint." *Id.* "If they are, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.*

In *Cheek*, Janet Cheek filed a complaint with the EEOC and the IDHR alleging that her employer discriminated against her because of her sex when it suspended her for six months without pay because of excessive absenteeism. *Id.* In those complaints, she alleged that male employees who had similar attendance records were treated more favorably. *Id.* When Cheek filed suit in federal court, she added the following new claims: "that men received better job assignments and more training opportunities than women, and that men in need of medical leave were treated more favorably than women with similar needs." *Id.* In response to her employer's motion for summary judgment and on appeal, Cheek advanced claims for sexual harassment and hostile work environment. *Id.* The Seventh Circuit affirmed the district court's finding that Cheek had waived these new claims.

The Seventh Circuit reasoned, "The allegations in Cheek's EEOC complaint, which asserted only disparate treatment and did not in any way advert to sexual harassment, are completely unrelated to those that underlie her harassment charges." *Id.* "Not having raised the claim or even its seeds before the EEOC, Cheek was not entitled to bring it in her Title VII action." *Id.* at 202-03 (citing *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir.)

("Filing an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken."), cert. denied, 513 U.S. 1001, 115 S. Ct. 512, 130 L. Ed. 2d 419 (1994)). The Seventh Circuit further reasoned that the expanded disparate treatment allegations were also not "like or reasonably related" to the claims she made in her complaint to the EEOC and IDHR. *Id.* at 203. "As with the harassment charges, they implicate entirely different circumstances and participants." *Id.* "Indeed, the only connection between the two charges is that they both allege a violation of Title VII. That similarity is not enough." *Id.*

Like the claims at issue in *Cheek*, Butler's age discrimination claim is not "like or reasonably related" to her race and disability discrimination claims. Butler does not point to any evidence that she alleged any facts in her administrative claims that would support an age discrimination claim. Rather, Butler claimed that the Board discriminated against her because of her race and disability. Thus, the Board is entitled to summary judgment on Butler's age discrimination claim.[6]

## E. Whether Butler improperly changed the factual allegations underlying her retaliation claim

The Board argues that it is entitled to summary judgment on Butler's claim that it retaliated against her in violation of the ADA and Title VII when it suspended her in 2008 because, in her Additional Statement of Facts, Butler improperly changed the factual allegations underlying her retaliation claim. Butler's second EEOC charge complains of the April 2008 suspension (which was proposed in Dec. 2007) and states, in pertinent part: "I further believe

---

[6] In addition, a party opposing summary judgment cannot ordinarily "amend her complaint through allegations made in response to a motion for summary judgment." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)); *But see* Fed. R. Civ. P. 15 (allowing a party to amend a pleading at any time to conform to the evidence where the opposing party has not been prejudiced.). Furthermore, Butler does not direct the court's attention to any evidence that would support a claim of age discrimination.

that I have been retaliated against for filing a complaint of discrimination, in violation of Title VII and the ADA." (Doc. 1.) In contrast, in her Additional Statement of Facts, Butler states, "Plaintiff does not claim the two – day suspension of December, 2007 was in retaliation for filing an EEOC claim in October, 2006. Rather, Plaintiff does claim the two – day suspension of April 8, 9, 2008 [sic] is in retaliation of Deborah Williams for Plaintiff's speech of April 5, 2008 [sic]." (Doc. 35.)

Like the claims at issue in *Cheek*, Butler's claim that the suspension she served in 2008 resulted from Williams retaliating against her for giving a speech is not "like or reasonably related" to Butler's earlier claim that the suspension resulted from the Board retaliating against her for complaining to the EEOC of disability discrimination in 2006. Thus, since Butler has abandoned her claim that the April 2008 suspension was the result of the Board retaliating against her for complaining of discrimination, and since Butler may not amend her complaint to raise a new claim that the suspension was actually the result of Williams retaliating against her because she gave a critical speech, the Board is entitled to summary judgment on Butler's 2008 retaliation claim.

## IV. CONCLUSION

The Board's motion for summary judgment is granted.

ENTER:

                                        /s/
                                     JOAN B. GOTTSCHALL
                                     United States District Judge

DATED: March 15, 2011